## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MUD KING PRODUCTS, INC., | § | Bankruptcy Case No. 13-32101 |
| Debtor/Cross-Appellant. | § | |

---------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, L.P., | § | |
| Appellant/Cross-Appellee. | § | **CIVIL ACTION NO. H-14-2316** |
| | § | |

## <u>MEMORANDUM AND ORDER</u>

Creditor National Oilwell Varco, L.P. ("NOV") filed a Notice of Appeal [Doc. # 1] from the July 17, 2014, Memorandum Opinion and Order, *In re Mud King*, 514 B.R. 496 (Bankr. S.D. Tex. 2014) [Doc. # 304 in BR Case 13-32101].  Debtor Mud King Products, Inc. ("Mud King") filed a Cross-Appeal [Doc. # 2-1], challenging the same Memorandum Opinion and Order.  NOV filed its Brief [Doc. # 14], Mud King filed its Brief [Doc. # 17], NOV filed its Response/Reply Brief [Doc. # 22], and Mud King filed its Reply Brief [Doc. # 23].  Having reviewed the full record and the applicable legal authorities, the Court **affirms** the Bankruptcy Court's Memorandum Opinion and Order.

I.     **BACKGROUND**

The factual background of this dispute is set forth fully in the Bankruptcy Court's Memorandum Opinion and Order, *In re Mud King*, 514 B.R. at 502-510. Briefly, NOV is a manufacturer and distributor of equipment and parts used in the oil and gas industry.  Freddy Rubiano was a manager at Mud King and a former NOV employee.   Liliana Arredondo, Rubiano's sister-in-law, was an NOV employee assigned to maintain sufficient quantities of parts inventory at NOV.

In 2011, while at Mud King, Rubiano asked Arredondo to obtain for him copies of certain NOV blueprints.  Arredondo eventually agreed to obtain the requested blueprints, which she provided to Rubiano by email and in paper form.

In August 2012, NOV's in-house attorneys received an anonymous letter advising that Rubiano was paying an NOV employee make copies of drawings for use by Mud King.  Enclosed were copies of two NOV engineering drawings.   In connection with NOV's investigation of the allegations, Arredondo confessed to taking the drawings and selling them to Rubiano.  Mud King obtained other NOV drawings from Larry Murray,  an owner of SMC, a machine shop in Odessa, Texas.

NOV sued Mud King in Texas state court.  The state court entered a temporary restraining order precluding Mud King from selling any part related to a blueprint or

technical drawing that came into Mud King's possession between January 31, 2011 and September 24, 2014.

Mud King removed the state court lawsuit to federal court, and this district court entered a similar preliminary injunction. In NOV's Third Amended Complaint [Doc. # 70 in Civil Action No. 4:12cv3120], NOV asserts the following causes of action against Mud King: misappropriation of trade secrets under federal law, conversion, violation of the Computer Fraud and Abuse Act ("CFAA"), and violation of the Texas Theft Liability Act ("TTLA") based on Mud King's alleged theft of NOV's trade secrets, conspiracy, aiding and abetting, and unjust enrichment.

Mud King filed its bankruptcy petition on April 1, 2013. NOV filed a proof of claim in Mud King's bankruptcy proceeding, listing the amount of the claim as "unknown." NOV alleged that Mud King realized profits of $283,859.96 through its use of NOV's drawings, and requested damages of almost $7 million. Mud King filed a Motion to Estimate Claim, contending that it realized only $131,094.28 in gross profits and asking the Bankruptcy Court to estimate NOV's claim at zero dollars.

The Bankruptcy Court had jurisdiction over this core proceeding. The Bankruptcy Court conducted an extensive evidentiary hearing on Mud King's Motion to Estimate Claim for eight days between October 3 - 16, 2013. Based on the evidence presented at the hearing, the Bankruptcy Court issued its Memorandum

Opinion and Order.  The Bankruptcy Court held that NOV failed to prove its causes of action for conversion, unjust enrichment, and violation of the CFAA.  The Bankruptcy Court held further that NOV failed to prove entitlement to exemplary damages.  Based on the misappropriation of trade secrets and TTLA claims, the Bankruptcy Court estimated NOV's claim at $74,434.95, plus possible prejudgment interest, plus $1,000.00 in statutory damages, plus attorneys' fees and costs.[1]  Both NOV and Mud King appealed the Bankruptcy Court's decision.

## II.   STANDARD OF REVIEW

Generally, the District Court reviews a bankruptcy judge's conclusions of law *de novo* and findings of fact under the "clearly erroneous" standard.  *See In re Thaw*, 769 F.3d 366, 368 (5th Cir. 2014).

A factual finding is clearly erroneous only if on the entire record, the court has "the definite and firm conviction that a mistake has been made."  *In re McClendon*, 765 F.3d 501, 504 (5th Cir. 2014) (internal quotations and citation omitted), *cert. denied*, 2015 WL 731880 (Fed. 23, 2015).  Stated differently, a factual finding is not clearly erroneous if it "is plausible in light of the record taken as a whole," even if the reviewing court would have weighed the evidence differently. *In re Bradley*, 501 F.3d

---

[1]     By Order [Doc. # 420 in BR 13-32101] entered January 30, 2015, the Bankruptcy Court calculated attorney's fees at $320,893.00.  That Order is the subject of a separate appeal pending before this Court as Civil Action No. H-15-0438.

421, 434 (5th Cir. 2007).  "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).  The district court must "be particularly mindful of the opportunity of the bankruptcy court to judge the credibility of witnesses." *Id.*

Mixed questions of law and fact are reviewed *de novo*.  *In re Positive Health Mgmt.*, 769 F.3d 899, 903 (5th Cir. 2014); *In re TMT Procurement Corp.*, 764 F.3d 512, 519 (5th Cir. 2014).

Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion.  *See In re Mandel*, 578 F. App'x 376, 391 (5th Cir. Aug. 15, 2014) (citing *In re Repine*, 536 F.3d 512, 518 (5th Cir. 2008)) (amount of attorneys' fees); *In re Vallecito Gas, LLC*, 771 F.3d 929, 932 (5th Cir. 2014) (evidentiary rulings); *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1042 (5th Cir. 2012) (whether to grant or deny injunctive relief), *cert. dismissed*, 133 S. Ct. 1862 (Apr. 16, 2013).  Importantly in this case, a "bankruptcy court's estimation of the value of an unliquidated claim . . . may be disturbed on appellate review only in the event of an abuse of discretion." *Matter of Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984); *see also Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 356 (3rd Cir. 2002); *Adams v. Cumberland Farms, Inc.*, 86 F.3d 1146, *4 (1st Cir. May 7, 1996) (unpublished)

("The bankruptcy courts are afforded substantial deference in this area, and errors assigned both to its estimates and its methods for achieving such estimates generally will be reviewed only for an abuse of discretion."); *Matter of Continental Airlines*, 981 F.2d 1450, 1461 (5th Cir. 1993); *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 136 (3rd Cir. 1982).

This Court "may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re Scotia Pac. Co., LLC*, 508 F.3d 214, 218-19 (5th Cir. 2007); *In re Wren Alexander Invs., LLC*, 530 F. App'x 302, 305 (5th Cir. June 4, 2013) (citing *In re Mirant Corp.*, 440 F.3d 238, 245 (5th Cir. 2006)).

## III.   ANALYSIS

### A.   Claim Estimation Process

A bankruptcy judge is authorized to estimate for purpose of allowance "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . .."  11 U.S.C. § 502(c)(1). The Bankruptcy Code does not dictate the method to be used to estimate a contingent or unliquidated claim, and the Fifth Circuit has stated that the Bankruptcy Court "should use whatever method is best suited to the circumstances." *Brints Cotton Mktg.*, 737 F.2d at 1341.  Methods used by bankruptcy courts to estimate a claim

include summary trials, evidentiary hearings, and simple review of the pleadings and oral argument. *See In re Cantu*, 2009 WL 1374261, *2 (Bankr. S.D. Tex. May 15, 2009) (citing *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994)). Some bankruptcy courts use an "ultimate merits" approach to estimating claims in which the value of the claim is estimated according to its merits, while others have focused on a probabilistic methodology in which the estimated value of the claim is "the amount of the claim diminished by probability that it may be sustainable only in part or not at all." *See Cantu*, 2009 WL 1374261 at *2-*3 (and cases cited therein).

Because the Bankruptcy Court has wide discretion regarding the methodology to be used to estimate a claim, an "appellate court may only reverse if the bankruptcy court abused its discretion. That standard of review is narrow. The appellate court must defer to the congressional intent to accord wide latitude" to the Bankruptcy Court's decision. *Bittner*, 691 F.2d at 136; *see also Brints*, 737 F.2d at 1341 (citing *Bittner*).

### B.      Challenge to Use of Claim Estimation Process

Mud King filed its Motion to Estimate Claim, to which NOV filed an Objection [Doc. # 57 in BR 13-32101] and Mud King filed a Reply [Doc. # 74 in BR 13-32101]. NOV also filed a Motion to Dismiss [Doc. # 56 in BR 13-32101], raising the same

arguments against using the claim estimation process.  After the Bankruptcy Court considered the parties' briefing, as well as the evidence and arguments of counsel presented at an evidentiary hearing on the issue on October 2, 2013, the Bankruptcy Court denied the Motion to Dismiss.  *See* Order Denying Motion to Dismiss [Doc. # 199 in BR 13-32101].

On appeal, NOV argues that there was overwhelming evidence that Mud King filed the bankruptcy petition in bad faith and in order to gain an unfair litigation advantage in NOV's civil lawsuit.  NOV asserts that, as a result, the Bankruptcy Court abused its discretion by utilizing the claim estimation process to estimate NOV's claim against Mud King.

The claim estimation process under § 502(c) avoids the need to delay administration of a bankruptcy case while liability and damages issues in outside lawsuits are resolved, and it "promotes a fair distribution to creditors through a realistic assessment of uncertain claims." *Matter of Continental Airlines*, 981 F.2d at 1461; *Matter of Ford*, 967 F.2d 1047, 1053 (5th Cir. 1992); *In re Texans CUSO Ins. Group. LLC*, 426 B.R. 194, 204 (Bankr. N.D. Tex. 2010).  The estimation of a creditor's claim is essential to the administration of the bankruptcy case particularly where, as here, that creditor's claim "potentially represents by far the most significant non-insider claim against the Debtor."  *Id.* at 204.  Indeed, until the value of NOV's

claim "is determined for purposes of allowance and voting in accordance with Section 502(c) of the Bankruptcy Code, no party is able to propose a meaningful plan of reorganization . . .." *See id.* The use of the § 502(c) claim estimation process was proper and clearly not an abuse of discretion.

### C.      Bankruptcy Court's Decision Regarding Existence of Trade Secrets

Under Texas law, six factors are considered when evaluating whether confidential information constitutes a trade secret. *See In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (the "*Bass* factors"). The six factors are:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* The Bankruptcy Court carefully considered the *Bass* factors. *See In re Mud King*, 514 B.R. at 510-15. Based on its consideration of the evidence as it related to the *Bass* factors, the Bankruptcy Court concluded that the NOV drawings, with the exception of the drawings that Mud King obtained from Larry Murray, constitute trade secrets. *See id.* at 515.

NOV argues that the Bankruptcy Court erred in finding, in connection with the third *Bass* factor, that NOV's confidentiality measures were inadequate. The

Bankruptcy Court's finding regarding NOV's security measures was not clearly erroneous or an abuse of discretion.  There was significant evidence that companies acquired by NOV failed to use adequate confidentiality measures to protect the drawings before they belonged to NOV.  Moreover, there was ample evidence before the Bankruptcy Court that NOV failed to monitor adequately its employees' access to the drawings, failed to monitor adequately which design information was provided to each vendors, and failed to ensure that its drawings were retrieved from current or previous vendors.  This evidence supports the Bankruptcy Court's finding that NOV's security measures were insufficient and that this factor weighed against the existence of a trade secret.[2]

NOV argues that the Bankruptcy Court, in connection with the first *Bass* factor, erred in finding that the two NOV drawings that Mud King acquired from SMC and Larry Murray were not trade secrets because they were known outside of NOV. Murray testified that he did not obtain the NOV drawings from NOV, but instead obtained them from Vernon Williams, owner of Texas Flange, another machine shop in Odessa, Texas.  NOV argues that this testimony "strains credulity."  *See* Brief [Doc. # 14], p. 46.  The Bankruptcy Court, however, credited Murray's testimony.  The

---

[2]     This Court, if conducting *de novo* review, would make the same finding regarding NOV's security measures, but might weigh that factor more heavily in reaching the ultimate decision regarding whether NOV's drawings constituted trade secrets.

Bankruptcy Court's evaluation of witness credibility is entitled to deference.  The finding that Murray did not obtain the subject drawings from NOV is not clearly erroneous, and the Bankruptcy Court's decision not to include these two drawings in the estimation of NOV's claim was not an abuse of discretion.

Mud King challenges the Bankruptcy Court's findings that the information in the drawings was not widely known outside of NOV or publicly available, that the information in the NOV drawings was not widely known by NOV employees and others involved in NOV's business, that the value of the information in the drawings weighed in favor of the existence of trade secrets, that NOV's efforts to develop the drawings represented a substantial investment in time and money, and that consideration of the *Bass* factors resulted in a determination that the drawings constitute trade secrets.  The Bankruptcy Court's findings are supported by evidence in the record and are not clearly erroneous.  For example, although the NOV drawings were widely disseminated to employees and vendors, the recipients were generally required to sign a confidentiality agreement.

This Court rejects the challenges by Mud King and NOV to the Bankruptcy Court's findings regarding whether NOV's drawings constitute trade secrets.  The Bankruptcy Court's evaluation and weighing of the six *Bass* factors was neither clearly erroneous nor an abuse of discretion.

**D.**     **Bankruptcy Court's Calculation of NOV's Damages**

The Bankruptcy Court correctly described the various methods for calculating damages in an action for trade secret misappropriation.  *See In re Mud King*, 514 B.R. at 521-22.  As the Bankruptcy Court correctly noted, the plaintiff can generally recover damages based on either the value of what the plaintiff has lost or the value of what the defendant has gained.  *Id.* (citing *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535-36 (5th Cir. 1974), and *Carbo Ceramics v. Keefe*, 166 F. App'x 714, 723 (5th Cir. 2006)).  The Bankruptcy Court concluded that Mud King "used" only the 23 NOV drawings from which Mud King improved 17 of its own parts, and based its calculation of Mud King's improperly derived profits on these 23 drawings.

"Use" of a trade secret includes "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through use of the information that is a trade secret."  *Id.* at 515-16 (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007)).  NOV argues that Mud King "used" all 81 drawings at issue by:  distributing them internally; engaging in quality control and inspection; copying the specifications from NOV's drawings into Mud King's drawings; marking on the drawings; creating electronic copies of the NOV drawings;

advertising products for sale; and expanding Mud King's business.[3]  As correctly

noted by the Bankruptcy Court, "[t]here is no clear legal precedent in Texas law for

computing damages where a competitor wrongly acquires a trade secret, but continues

to sell its own parts without use of that trade secret." *Id.* at 522.  The Bankruptcy

Court noted that Mud King had operated for many years selling at least 81 of the

aftermarket parts at issue, and continued to sell the same 81 parts unchanged after it

possessed NOV's drawings.  *See id.* at 522.  The Bankruptcy Court determined that

the alleged conduct regarding all 81 drawings did not constitute commercial use for

purposes of computing damages for misappropriation of trade secrets.  This finding

was not clearly erroneous and, more importantly for purposes of a claim estimation

analysis, was not an abuse of discretion.

NOV argues also that the Bankruptcy Court incorrectly failed to include

$4,001,546.90 in the claim estimation, which reflects the hypothetical cost to Mud

King to create 204 new drawings by reverse engineering the corresponding 204 NOV

parts.  The Court agrees with the Bankruptcy Court's ruling that where, as here, the

---

[3]     NOV argues that it is entitled to an adverse inference of commercial use based on
Mud King employees' invocation of the Fifth Amendment during their depositions.
The Bankruptcy Court conducted a hearing on the issue.  The Bankruptcy Court held
that there was insufficient evidence to draw the requested adverse inferences against
Mud King based on these witnesses' assertion of their Fifth Amendment rights and,
therefore, denied admission of the deposition transcripts.  *See* Order [Doc. # 427 in
BR 13-32101].  NOV has failed to demonstrate that this evidentiary ruling was an
abuse of discretion.

defendant has used the plaintiff's trade secrets and derived profits from that use, development costs that the defendant avoided generally are not available. *See id.* at 523-24 (and cases cited therein).

In connection with NOV's challenges to the Bankruptcy Court's calculation of damages generally, this Court again notes that the Bankruptcy Code does not dictate the method to be used to estimate a contingent or unliquidated claim.  As a result, the Bankruptcy Court "should use whatever method is best suited to the circumstances." *Matter of Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984).  Because the Bankruptcy Court has such wide discretion regarding the methodology to be used to estimate a claim, an "appellate court may only reverse if the bankruptcy court abused its discretion." *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 136 (3rd Cir. 1982); *see also Brints*, 737 F.2d at 1341 (citing *Bittner*).  The Bankruptcy Court carefully considered the specific facts and circumstances presented in this dispute and determined the best method for estimating NOV's claim was to limit the value of the claim to Mud King's profits from use of the misappropriated trade secrets.  There was no abuse of discretion, and the Bankruptcy Court's calculation of NOV's damages for purposes of the claim estimation is affirmed.

### E.    Bankruptcy Court's Estimation of CFAA Claim

NOV alleges that Mud King, through NOV's employee Arredondo, knowingly and with the intent to defraud, accessed NOV's protected computer in a manner that exceeded her authorized access, in violation of the CFAA.  For NOV to have a private right of action for the alleged violation of the CFAA, it must prove that it suffered "damage or loss" and that the loss during any 1-year period was at least $5,000.00. *See* 18 U.S.C. §§ 1030(g); 1030(c)(4).  NOV argues that the Bankruptcy Court incorrectly required it to prove repair costs or interruption of service in order to satisfy the $5,000.00 minimum.  NOV argues that the cost of a forensic examination by LCG Discovery Experts ("LCG") and the cost of an investigation conducted by its law firm exceed the $5,000.00 requirement.

"Damage" is defined under the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." *See* 18 U.S.C. § 1030(e)(8). The term "loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, ***and*** any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(9) (emphasis added).  The term "loss" includes costs incurred in connection with either (1) an impairment of data, a program, a system, or

information, or (2) an interruption of service.  It is undisputed that NOV did not incur any interruption of service.

NOV argues that any costs incurred in "responding to an offense" are included in the loss calculation.  Based on that argument, NOV argues further that LGC's invoices contain several line items that total more than $5,000.00.  The Bankruptcy Court held that costs incurred in "responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense" are recoverable (and therefore included in the $5,000.00 minimum) only if there was an impairment of data.  This Court concludes that NOV's argument is overly broad.  The words "responding to an offense" must be read together with the complete definition of "loss."  The Bankruptcy Court's requirement that the costs are incurred in connection with an impairment of data is supported by the statutory definition of "loss."  The phrase "conducting a damage assessment" incorporates the statutory definition of "damage" and, therefore, requires that the costs be associated with an assessment of "any impairment to the integrity or availability" of the data.  There was no evidence that data on the NOV computers was impaired by Arredondo's improper access.  Similarly, the phrase "restoring the data . . . to its condition prior to the offense" indicates that the condition of the data must have been impaired or otherwise affected by the improper access.  None of the cases to the contrary on which NOV relies to support its argument are from the Fifth Circuit or

from district courts within the Fifth Circuit.[4]  Moreover, the cases cited by NOV are unpersuasive.  In the Fourth Circuit case, *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009), the limited issue before that Court was whether the term "economic damages" recoverable for a violation of the CFAA could include consequential damages, not whether recoverable costs for a "loss" must be incurred in connection with an impairment of data or an interruption of service.  The First Circuit case, *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001), was decided based on a prior version of the CFAA that did not define the term "loss."[5]  This Court concludes that the Bankruptcy Court correctly held that recoverable costs under the CFAA are those incurred in addressing an interruption of service or an impairment of data.

---

[4]    NOV cites *Willis of Texas, Inc. v. Stevenson*, 2009 WL 7809247 (S.D. Tex. May 26, 2009) (Ellison, J.).  In that case, Judge Ellison merely described the plaintiff's allegations, including the allegation that it could prove damage in excess of $5,000.00, in denying a motion to dismiss a CFAA claim.  The case later settled with no ruling on the merits of the CFAA claim.  *See* Stipulation of Dismissal Without Prejudice [Doc. # 47 in Civil Action No. H-09-404].  Judge Ellison's opinion does not support NOV's argument that its recoverable costs need not relate to interruption of service or impairment of data.

[5]    The Fourth Circuit in *iParadigms* noted that the CFAA was amended after the district court issued its decision, but that the amendments did not "bear upon the limited issue before the panel – whether the district court correctly interpreted "economic damages" as that term is used in § 1030(g)."  *iParadigms*, 562 F.3d at 645, n.10.  The Fourth Circuit stated further that it was taking "no position, of course, as to what effect, if any, the amendments otherwise have on the legal sufficiency of iParadigms' [CFAA claim]."  *Id.*

The Bankruptcy Court correctly found that NOV failed to demonstrate that the costs charged by LCG and by NOV's attorneys satisfied this requirement.  There was no evidence relating the line items on LCG's invoices to any investigation by LCG of any actual or suspected data impairment.  Indeed, Brad Ortego, NOV's Investigations Manager, testified that he did not discover, was not told about, and never saw any reports indicating that was any impairment to NOV's computer systems as a result of Arredondo's improper access.  He testified that, to his knowledge, NOV hired no technicians or forensic computer companies to repair NOV's computers or computer systems.  Similarly, Ken Tisdel, NOV's witness from LCG, testified that LCG was hired to "assist in an electronic discovery matter to conduct some imaging on a Saturday morning."  *See* Transcript, Trial - Day 7 [Doc. # 226 in BR 13-32101], p. 8. There is no evidence, including the random line items on LCG invoices, that Tisdel or LCG conducted an investigation or assessment of any impairment to data, computer programs, systems, or information on NOV's computers.  The Bankruptcy Court's finding that "Tisdel and his firm were hired by NOV's counsel to assist in discovery and that Tisdel conducted no investigation or assessment of NOV's computer system" is not clearly erroneous.

Absent evidence that NOV incurred costs in connection with an impairment of its data or an interruption in computer service, the Bankruptcy Court's estimate of the value of the CFAA claim at zero was not an abuse of discretion.

### F.     Bankruptcy Court's Failure to Enter Permanent Injunction

NOV argued that the Bankruptcy Court erred by not entering a permanent injunction against Mud King.  Whether to grant injunctive relief is a matter within the Bankruptcy Court's discretion and, as a result, is reviewed for an abuse of discretion. *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1042 (5th Cir. 2012).  Mud King returned all NOV drawings in its possession, and there is no evidence that Mud King currently possesses any of NOV's trade secrets.  Because it appears unlikely that Mud King has the ability to use any of NOV's drawings in the future, the denial of a permanent injunction was not an abuse of discretion.

## IV.   CONCLUSION AND ORDER

The estimation of an unliquidated claim pursuant to 11 U.S.C. § 502(c) is reviewed for an abuse of discretion.  For the reasons stated in the Bankruptcy Court's thoughtful and thorough Memorandum Opinion and Order, and for the reasons stated herein, it is hereby

**ORDERED** that the Bankruptcy Court's Memorandum Opinion and Order [Doc. # 304 in BR Case No. 13-32101] is **AFFIRMED**.

The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this **27th** day of **February, 2015**.

P:\ORDERS\11-2014\2316BRApp.wpd   150227.1440

19

Nancy F. Atlas
United States District Judge